# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BELINDA HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV952 |
| | ) | |
| CONVATEC, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed <u>In Forma Pauperis</u> (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 3). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of her federal claims under 28 U.S.C. § 1915(e)(2)(B) and dismissal without prejudice of her state-law claims under 28 U.S.C. § 1367(c)(3).

## LEGAL BACKGROUND

"The federal *in forma pauperis* ['IFP'] statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties

proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing [IFP] d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the IFP statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).

A complaint falls short when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of

2

DISCUSSION

Plaintiff's Complaint names as Defendants ConvaTec, Inc., as well as Tanice House, Chris Hazlip, Marty Martin, Jean Doe, Travis Brewington, Stan Benson, Thomas Brugnoll, Jason Prichard (alternately referred to as Jason Patrick), Megan Goode, Annette Holloway, and Crystal Hall (all employees of ConvaTec or Aerotek Staffing Agency). (Docket Entry 3 at 1-2, 8.) It states that Aerotek placed Plaintiff in a position with Defendant ConvaTec, where she allegedly suffered race discrimination, violations of wage-and-hour laws, and retaliation for reporting her concerns as to each of the foregoing. (Id. at 3-6.)[2] In support of Plaintiff's claims, the Complaint presents the following factual allegations:

1) "[o]n Monday, May 12, 2014[,] [Plaintiff] became employed with Aerotek [] and placed on a two year assignment with [Defendant] Conva[T]ec Inc." (id. at 4);

---

Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

[2] Plaintiff also filed a nearly identical Complaint against Aerotek and two of its employees. See Howard v. Aerotek Staffing Agency, No. 1:14CV951-CCE-LPA (Docket Entry 3) (M.D.N.C.).

3

2) "[Defendant] Holloway . . . offered [Plaintiff] a shift position of 7-3 Monday thru Friday" (id.);

3) during that employment, Plaintiff reported two incidents of racial discrimination suffered by her co-workers:

i) first, "there were occasions when Aerotek employees did not want to rotate [according to] department policies and [were] not forced to do so by [Defendant] Martin (Department Lead) because of discriminatory reasons" (id. at 3); however, "[s]ubsequently, [Defendant] House (Aerotek [e]mployee) reported the situation to [Defendant] Long (Department Supervisor) and soon after proper procedures [were] followed" (id.); and

ii) second, Plaintiff "reported a discriminatory incident against a [Defendant] ConvaTec mechanic . . . which occurred on or around May 26, 2014, to [Defendant] Long" (id. at 4);

4) "[o]n June 2, 2014[,] as [Plaintiff] approached the time clock at approximately 3:10pm having difficulty punching out[,] [Defendant] Holloway (Assistant Plant Manager) said, 'You should still be working'" (id.);

5) "[Plaintiff] replied by asking 'Why employees[] are not paid for the extra 10 minutes [they] are required to work every day?'" (id.)

6) "[a]fter posing a question about pay[,] from June 3, 2014[,] until June 11, 2014[,] [Plaintiff] experienced retaliation

4

[] by [Defendant] Holloway" (id.), as demonstrated by the following incidents:

i) "[Plaintiff] was followed at 10am ([Plaintiff's] first 20 minute break) and at 1pm ([Plaintiff's] second 20 minute break)" (id.);

ii) "[o]n or before June 5, 2014, upon returning from [her] 10am break, [Defendant] Holloway stood in front of [her] work station in [her] personal space leaving [her] with just about an inch to squeeze by her, watching the time when [Plaintiff] returned" (id. at 5);

iii) "[l]ater, [Plaintiff] was approached at [her] work station by supervisor [Defendant] Hall[] [who] stated she was told by [Defendant] Holloway ([Defendant] Hall's] [s]upervisor) [that] [Plaintiff] returned from [her] 10am break late" (id.);

iv) Plaintiff responded that "[she] was unaware the other four ladies had left for break, so [Plaintiff] left a couple of minutes later . . . [and] therefore [Plaintiff] was not late returning two minutes after the group returned" (id.); and

v) "[Defendant] Hall ([s]upervisor) stated [Plaintiff] must leave and return with the group every day [and] [Plaintiff] responded [that] [she] [would] make sure [to do so]" (id.);

7) "[o]n June 10, 2014[,] [Defendant] Doe [Plaintiff's coworker] and [Plaintiff] had a conversation that upset [Defendant] House] [and] [l]ater on that day [Defendant House] and [Plaintiff]

began to talk, [a] general conversation[,] [and] [Plaintiff] tried to be the peace maker" (id. at 6);

8) "[Plaintiff] talked about the news mentioning the shooting in Washington, DC in which [Plaintiff's] mother has a close friend . . . [and] [Plaintiff] mentioned [her] 31 year old son who is a little wild and crazy and what he would do in a situation related to the one in DC" (id.);

9) "[o]n June 11, 2014[,] [Defendant] House [r]eported to [Defendant] Martin [that] [Plaintiff] was going home to get a gun and [Plaintiff] was terminated a few hours later by [a] telephone [call] from [Defendant] Goode" (id.);

10) "[a]n investigation was performed by Jason Pritchard (Employees Relations Specialist) for the Aerotek Staffing Agency . . . [which] determined [that] [Plaintiff] was still eligible to be employed by Aerot[e]k, but as of November 11,, 2014[,] additional employment has not been offered" (id. at 7); and

11) "[Plaintiff] ha[s] contacted [Aerotek] on several [occasions] concerning emails [she] [] receive[d] for employment but the job was either filled or did not meet [Plaintiff's] qualifications" (id.).

In that regard, Plaintiff's Complaint asserts that she "has established prima facie cases of wrongful termination, retaliation, discrimination, defamation of character, hostile work environment, and back pay wages." (Id. at 7.) The Complaint further states

6

that, "[t]o shift the charge of whistleblowing and retaliation to the charge of threatening someone with a gun is unprofessional, [and] committed out of anger and hatred for [Plaintiff]." (Id.) Plaintiff reportedly filed charges with the EEOC in July of 2014 and received her notice-of-right-to-sue letter on September 23, 2014. (Id.; see also Docket Entry 3-1.) Based on the foregoing, Plaintiff seeks $46,100 from Defendant ConvaTec; $10,000 each from Defendants Holloway, House, Long, and Hazlip; and $5,000 each from Defendants Brewington, Doe, Goode, Prichard, Brugnoli, Benson, and Martin. (Docket Entry 3 at 8.)

Plaintiff's Complaint appears to assert possible claims under both Title VII and the Fair Labor Standards Act ("FLSA") against Defendant ConvaTec. However, as an initial matter, Plaintiff's Complaint does not identify, nor do the facts alleged therein appear to support, any federal cause of action against several of the individual Defendants. Title VII does not provide for a cause of action against an individual supervisor. See Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) ("Congress only intended employers to be liable for Title VII violations.") Although the FLSA contemplates liability against individuals with "extensive managerial responsibilities and 'substantial control of the terms and conditions of the work of [] employees,'" Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 416 (D. Md. 2013) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)), Plaintiff's Complaint

7

fails to provide facts, at least as to Defendants House, Doe, Goode, and Prichard (see Docket Entry 3 at 1-8), to support an inference of any managerial responsibilities, see Pearson v. Professional 50 States Protection, LLC, Civ. No. RDB-09-3232, 2010 WL 4225533, at *4 (D. Md. Oct. 26, 2010) (unpublished) (collecting cases, reflecting circumstances not present here, where courts have held individual officers, directors, or owners liable under FLSA). Under these circumstances, the Court should dismiss the claims under Title VII and the FLSA against Defendants House, Doe, Goode, and Prichard and, further, dismiss the Title VII claims against Defendants Holloway, Long, Hazlip, Martin, Brewington, Benson, and Brugnoll.

As to Defendant ConvaTec, Plaintiff has not stated a claim for race discrimination under Title VII because she has failed to allege facts to support that she suffered any discrimination based on race. The Complaint's only reference to racially discriminatory practices concern discrimination allegedly suffered by her co-workers. (See Docket Entry 3 at 1-8.) An employer violates Title VII by "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Accordingly, Title VII generally does not allow an employee to recover based on violations of another person's civil rights. See, e.g., Krasner v. HSH Nordbank AG, 680 F. Supp. 2d

8

502, 515 (S.D.N.Y. 2010) ("[Plaintiff's] concern for a woman's right to be free of workplace discrimination, and offense taken upon being surrounded by conduct believed to impinge on that right, admirable as it may be, does not make [Plaintiff] himself a victim of gender-based discrimination within the scope of Title VII's protections."). In that regard, Plaintiff's Complaint first baldly asserts that "discriminatory reasons" resulted in the lack of enforcement of task-rotation policies. (Docket Entry 3 at 3.) The lack of factual matter supporting any such assertion renders it insufficient to support a claim. See Iqbal, 556 U.S. at 678. Further, the Complaint states that a co-worker (Defendant House) reported the problem to management and that "soon after proper procedures w[ere] followed." (Docket Entry 3 at 3.) Second, the Complaint asserts in a conclusory fashion - and without further details - that Plaintiff "also reported a discriminatory incident against a [Defendant] ConvaTec mechanic." (Id. at 4.) Such allegations do not support a Title VII claim for race discrimination. See Iqbal, 556 U.S. at 678.

Although an employee may bring a Title VII retaliation claim "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e-3(a), Plaintiff's Complaint likewise fails to state a claim for retaliation under Title VII. To establish retaliation in employment under Title VII,

> [Plaintiff] may proceed in one of two ways. First, [s]he may present direct evidence of h[er] superiors'

> [retaliatory] intent. Second, [s]he may attempt to satisfy the test specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows h[er] to raise an inference of [retaliatory] intent by showing that [s]he was treated worse than similarly situated employees of other [relevant groups]. Defendants are then entitled to respond by presenting a legitimate, non[retaliatory] reason for their actions.

Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2005) (internal citations omitted).[3] Plaintiff's Complaint does not allege factual matter indicating the existence of direct evidence of retaliatory intent. (See Docket Entry 3 at 1-8.) Accordingly, Plaintiff must rely on the McDonnell Douglas test, which first requires establishment of a prima facie case. See Coleman v. Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010).

"The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Id. The Complaint's first allegation of racial discrimination - discrimination in the assignment of job tasks - does not satisfy the protected activity element because Plaintiff states that a co-worker reported a problem concerning another co-worker. (See Docket Entry 3 at 3.) Thus, Plaintiff herself did not engage in a protected activity under Title VII. See Coleman, 626 F.3d at 190. As to the second

---

[3] Although McDonnell Douglas arose in the discrimination context, its framework also applies to retaliation claims. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 n.1 (4th Cir. 2000).

10

allegation – the conclusory reference to Plaintiff's reporting of "a discriminatory incident against a [Defendant] ConvaTec mechanic" (Docket Entry 3 at 4) – the Complaint fails to allege sufficient facts to show protected activity or to warrant an inference of a causal connection between that incident and an adverse employment consequence suffered by Plaintiff (see id. at 1-8). See Iqbal, 556 U.S. at 678.

Plaintiff's Complaint similarly lacks adequate factual matter to support a claim under the FLSA. "The [FLSA] sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." Kasten v. Saint-Gobhain Performance Plastics Corp., __ U.S. __, __, 131 S. Ct. 1325, 1329 (2011). Under that statute, a covered employer must compensate a nonexempt employee "at a rate not less than one and one-half times the regular rate" for any hours worked beyond forty hours in a given week. 29 U.S.C. § 207(a)(1). "To state a claim for unpaid overtime wages under FLSA, [a] [p]laintiff must allege (1) that [she] worked overtime hours without compensation; and (2) that the employer knew or should have known that [she] worked overtime but failed to compensate [her] for it." Sanchez v. Truse Trucking, Inc., No. 1:13CV415, 2014 WL 3784109, at *3 (M.D.N.C. July 31, 2014) (unpublished) (Beaty, S.J.) (internal quotation marks omitted).

"In the wake of the Iqbal and Twombly decisions, courts across the country have expressed differing views as to the level of

factual detail necessary to plead a claim for overtime compensation under [the] FLSA." Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 667 (D. Md. 2011). District courts in the Fourth Circuit have adopted a comparatively lenient approach, see Sanchez, 2014 WL 3784109, at *3 (collecting cases), under which a "plaintiff[] need not provide a running list of specific work days for which [she was] not paid; it is enough that [she has] provided a clear factual statement charging as much," Davis v. Skylink LTD., Civ. No. 3:11-0094, 2011 WL 2447113, at *4 (S.D. W. Va. June 15, 2011) (unpublished) (emphasis added); see also Alston v. Becton, Dickinson & Co., No. 1:12CV452, 2013 WL 4539634, at *4 (M.D.N.C. Aug. 27, 2013) (unpublished) (concluding complaint alleging 310 hours of unpaid overtime over two years stated claim under FLSA); Long v. CPI Sec. Sys., Inc., No. 3:12CV396-RJC-DSC, 2012 WL 3777417, at *4 (W.D.N.C. Aug. 30, 2012) (unpublished) (finding sufficient allegations of work averaging 50-60 hours per week over four-year period without overtime pay). Thus, at a minimum, an FLSA overtime complaint must state a rough estimate of overtime hours worked or total hours worked each week, without proper compensation.

Plaintiff's Complaint alleges that Defendant Holloway "offered [her] a 1st shift position of 7-3 Monday thru Friday" (Docket Entry 3 at 4) and that, on one day, "as [Plaintiff] approached the time clock at approximately 3:10pm having difficulty punching out[,]

12

[Defendant] Holloway (Assistant Plant Manager) said, 'You should still be working' . . . [and] "[Plaintiff] replied by asking "Why employees[] are not paid for the extra 10 minutes [they] are required to work every day?" (id.). The Complaint further states: "[W]e were not receiving time and a half pay for the 10 minutes we were required to work each day." (Id. at 5.) Notwithstanding the foregoing, Plaintiff's Complaint fails to allege that she actually worked more than forty hours in any week.

In that regard, the regulations promulgated under the FLSA do not consider all paid time as working time. See Johnson v. City of Columbia, S.C., 949 F.2d 127, 129 (4th Cir. 1991) ("Generally speaking, the FLSA clearly requires employers to pay employees overtime for all hours worked over forty in one week. There are, however, certain exceptions and exclusions . . . ."). For instance, if Defendant ConvaTec afforded Plaintiff a paid 30-minute daily lunch break, such time would not count toward her total hours worked that week, and Plaintiff would have no entitlement to overtime pay. See 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime . . . . Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions."). Moreover, Plaintiff has not stated that she consistently arrived on time for work. (See Docket Entry 3 at 1-8.) Simply put, given that Plaintiff has not alleged that she actually accrued over forty hours of working time in a given

13

week, or provided a total estimate of the number of hours of overtime she worked without additional compensation, the Complaint does not contain sufficient factual information to state a claim for failure to pay overtime compensation.

The FLSA further "contains an antiretaliation provision that forbids employers 'to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* . . . under or related to [the FLSA] . . . .'" Kasten, __ U.S. at __, 131 S. Ct. at 1329 (quoting 29 U.S.C. § 215(a)(3)) (emphasis in original). Moreover, the Supreme Court has concluded that "the statutory term 'filed a complaint' includes oral as well as written complaints within its scope." Id. As with Title VII, "[an] [FLSA] plaintiff may show retaliation by direct evidence or indirectly through a *McDonnell Douglas* type proof scheme." Strickland v. MICA Info. Sys., 800 F. Supp. 1320, (M.D.N.C. 1992). Again, Plaintiff's Complaint lacks factual matter suggesting the existence of direct evidence of retaliatory intent (see Docket Entry 3 at 1-8) and, thus, she must follow the relevant proof scheme. "A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) [s]he engaged in an activity protected by the FLSA; (2) [s]he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the

employer's adverse action." Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008).

The Fourth Circuit has looked to Title VII to interpret the FLSA's retaliation provision and found "no significant differences in either the language or intent of the two statutes regarding the type of adverse action their retaliation provisions prohibit." Id. at 342. "[A] plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee' because the 'employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge [under the FLSA].'" Id. at 343 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). That said, "the Supreme Court in *White* was clear that, generally, 'petty slights, minor annoyances, and simple lack of good manners,' which are not uncommonly found in the workplace, do not qualify as materially adverse employment actions." Wilcoxon v. DECO Recovery Mgmt., LLC, 925 F. Supp. 2d 725, 731 (D. Md. 2013) (quoting White, 548 U.S. at 68).

Plaintiff's Complaint alleges that, after she raised concerns with Defendant Holloway about overtime pay, "[Plaintiff] came under personal attack and the workplace was being used to execute a vindictive behavior, because [of] [Plaintiff's] knowledge [of] the fact that [employees] were not receiving time and a half pay for

15

the 10 [additional] minutes we were required to work each day." (Docket Entry 3 at 5.) As examples of retaliation she suffered, Plaintiff states that one supervisor reprimanded her for not taking her break at the same time as her coworkers and that another supervisor monitored her breaks to ensure she did not take more than the allotted time. (See id.) Nonetheless, "[e]ven under the more generous standard that governs retaliation claims, a reprimand without more is not an adverse employment action." Chaib v. Indiana, 744 F.3d 974, 987 (7th Cir. 2014) (emphasis added) (internal quotation marks omitted); see also Wilcoxon, 925 F. Supp. 2d at 731 ("[Employee] speaks of her embarrassment and discomfort at being berated by [her employer] in front of her sales team, but this is not enough to elevate her maltreatment to the level of a materially adverse employment action." (internal citation omitted)). Similarly, "monitoring of [an employee's] performance [and] breaks . . . are, at most, 'petty slights, minor annoyances, and simple lack of good manners' that cannot be classified as materially adverse employment actions." Lindsey-Grobes v. United Airlines, Inc., No. GJH-14-00857, 2014 WL 5298030, at *10 (D. Md. Oct. 14, 2014) (unpublished) (quoting White, 548 U.S. at 68) (internal citation omitted).

Plaintiff's Complaint then appears to claim some connection between the alleged retaliatory acts and her termination approximately two weeks later, stating: "[t]o shift the original

16

charge of whistleblowing and retaliation to the charge of threat[en]ing someone with a gun is unprofessional [and] committed out of anger and hatred for me" (Docket Entry 3 at 7). However, this conclusory assertion alone does not support a reasonable inference that Plaintiff's oral complaint about overtime caused her termination. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Furthermore, even assuming that Plaintiff had established a prima facie case for retaliation under Title VII or the FLSA, her claim would fail because she has acknowledged "a legitimate, non-retaliatory reason for the adverse action [i.e., her termination]," Mould v. NJG Food Serv. Inc., Civ. No. JKB-13-1305, 2014 WL 3943693, at *12 (D. Md. Aug. 12, 2014) (unpublished) (citing Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002)). According to Plaintiff, the day following her conversation with co-worker Defendant House regarding a shooting in Washington, D.C., "[Defendant] House [r]eported to [supervisor] [Defendant] Martin that [Plaintiff] was going home to get a gun, and [Plaintiff] was terminated a few hours later by telephone from [Defendant] Goode." (Docket Entry 3 at 6.) In that regard, the face of the Complaint indicates that a co-worker's report of alleged comments by Plaintiff resulted in her firing.

17

Even considering these facts in a light most favorable to Plaintiff - and assuming that Defendant House misunderstood Plaintiff - the circumstances would not entitle Plaintiff to relief under Title VII or the FLSA because Plaintiff's own allegations show that something other than conduct protected under those acts caused Plaintiff's termination. Further, according to Plaintiff, Defendant House allegedly suffered racial discrimination in the workplace and Defendant House - not Plaintiff - reported that incident to a supervisor. (Docket Entry 3 at 3.) Accordingly, no reason exists to believe Defendant House played some part in a plot to retaliate against Plaintiff for engaging in protected activity. Similarly, Plaintiff's Complaint names Defendant Holloway as the perpetrator of the alleged acts of retaliation (id. at 4), but it assigns Defendant Holloway no role in Plaintiff's termination beyond her alleged failure to intervene (see id. at 6-9). In sum, Plaintiff has failed to allege any facts which would establish a plausible causal relationship between conduct protected by Title VII or the FLSA and her termination to support a claim for retaliation.

Plaintiff's only remaining claims arise under state law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage and the absence of grounds for the exercise of diversity jurisdiction,[4] the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and, instead, should dismiss those claims without prejudice.

## CONCLUSION

Plaintiff's federal claims fall short as a matter of law.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support

---

[4] The Complaint identifies Plaintiff and Defendant ConvaTec as residents of Guilford County, North Carolina. (Docket Entry 3 at 1.) Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a).

19

(Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that Plaintiff's federal claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and that her state claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 2, 2015